**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


RONALD BANKS,                        )
                                     )        Civil Action No. 14 – 27J
                  Plaintiff,         )
                                     )
        v.                           )        Chief District Judge Joy Flowers Conti /
                                     )        Magistrate Judge Lisa Pupo Lenihan
GERALD L. ROZUM, *et al*.,           )
                                     )
                  Defendants.        )         ECF No. 32


## REPORT AND RECOMMENDATION

### I.      RECOMMENDATION

For the following reasons, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 32) be granted and that Plaintiff's Complaint be dismissed with prejudice for failure to state a claim.

### II.     REPORT

Plaintiff, Ronald Banks, is a state prisoner currently confined at SCI-Albion.  He initiated the above captioned prisoner civil rights action on February 13, 2014, by submitting a Motion for Leave to Proceed *in forma pauperis* accompanied by a Complaint filed pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  His Complaint was docketed on March 5, 2014.  (ECF No. 3.)

Plaintiff alleges that Defendants, employees at SCI-Somerset (his former place of confinement) violated his rights under the United States Constitution in various ways during the entirety of the time he was incarcerated at that facility; from December 2010 to August 2013.  Defendants responded to the Complaint by filing a Motion to Dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6), (ECF No. 32), and Plaintiff filed a response to their Motion (ECF Nos. 35, 36). Accordingly, the Motion is now ripe for review.

## A. Standard of Review

Recently, the United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

## B. Discussion

The 400 paragraphs of factual allegations contained in Plaintiff's Complaint (ECF No. 3) are summarized by event and/or claim as follows.

### 1. Claims stemming from January 12, 2011 cell search

Plaintiff alleges that during a security search of his cell on January 12, 2011, Defendant Pritts confiscated his radio after he refused to sign a "Confiscated Items Receipt Form". Id. at ¶¶ 31, 35-37. Defendant Pritts claimed that Plaintiff had tampered with the radio and therefore it was considered contraband. Id. at ¶ 33. After he filed a grievance, the radio was returned to Plaintiff on February 9, 2011. Id. at ¶¶ 38-40.

It is unclear exactly what claim, if any, Plaintiff is raising with respect to the confiscation of his radio by Defendant Pritts. To the extent he alleges an unlawful takings claim under the Fifth Amendment, no such violation occurred because the Takings Clause is violated only when private property is taken for a public use, i.e., appropriated to a public benefit, not for private or individual use. *See* Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 160 (1980); *see also* Scott v. Phila. Hous. Auth., No. 10-4723, 2011 WL 1791095 at *5 (E.D. Pa. May 11, 2011). Furthermore, Plaintiff's radio was confiscated because it was thought to be contraband, and this type of deprivation of property is not a "taking" under the Fifth Amendment. *See* Tormasi v. Hayman, 443 F. App'x 742, 746 (3d Cir. 2011) (citing Savko v. Rollins, 749 F. Supp. 1403, 1412-14 (D. Md. 1990), holding that, under prison regulation, "the State may confiscate property not for the beneficial use of the public, but rather as a quintessential police power function: the orderly and secure operation of the State's prisons")).

To the extent Plaintiff alleges that Defendant Pritts confiscated the radio in retaliation for Plaintiff not signing the "Confiscated Items Receipt Form," (although it seems to the Court that the sequence of events would have been reversed), Plaintiff has not stated a claim for retaliation. To establish a claim for retaliation, a plaintiff bears the burden of satisfying three elements. First, a prisoner-plaintiff must prove that he engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner-plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."[1] Id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). Third, a prisoner-plaintiff must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to

---

[1] This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." Id. (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).

discipline him." Rauser, 241 F.3d at 333-34 (quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The refusal to sign a "Confiscated Items Receipt Form" is not a protected activity for purposes of establishing a retaliation claim.

The only other claim that Plaintiff could conceivably be raising against Defendant Pritts with respect to this incident is a due process claim. However, such a claim fails because a "meaningful post-deprivation remedy" was available to Plaintiff after the radio was confiscated. *See* Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding that there is no due process violation "if a meaningful post-deprivation remedy is available for the loss"). The Third Circuit Court of Appeals has held that the Pennsylvania Department of Corrections' grievance procedure "provides an adequate post-deprivation remedy" in satisfaction of the Due Process Clause for prisoners making claims for damage to or loss of personal property. Durham v. Dep't of Corr., 173 F. App'x 154, 157 (3d Cir. 2006); *see also* McEachin v. Beard, 319 F. Supp. 2d 510, 514-15 (E.D. Pa. 2004) (citing Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000)). Plaintiff utilized the prison grievance procedure and his radio was eventually returned to him. It is irrelevant to the due process analysis whether Defendant Pritts intentionally confiscated Plaintiff's radio or did so believing that the radio was truly contraband. *See* Hudson, 468 U.S. at 533.

2. **Retaliation claim stemming from February 27, 2012 cell search**

Plaintiff alleges that Defendants Harkcom and Kalasky targeted his cell for a search on February 27, 2012, in retaliation for him filing a grievance against Defendants Pritts and Bakos on January 28, 2011. The grievance was in relation to the confiscation of Plaintiff's radio on January 12, 2011. (ECF No. 3 at ¶ 42.)

While courts have held that the filing of a grievance is a protected activity under the First Amendment, *see* Booth v. King, 346 F. Supp. 2d 751, 762 (E.D. Pa. 2004), the mere fact that an adverse action occurs after a grievance (or complaint) is filed is not dispositive for the purpose of establishing a causal link between the two events *see* Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005). However, the search of a cell is not a sufficient adverse action for purposes of a retaliation claim, irrelevant of whether it is intentional. Therefore, Plaintiff has failed to state a claim for retaliation as to this incident.

**3.      Claims stemming from March 5, 2012 cell search**

Plaintiff alleges that Defendants Pritts and Harkcom targeted his cell for a search on March 5, 2012, and demanded that he drop a lawsuit that he had filed against SCI-Retreat officials. Defendant Pritt threatened to confiscate Plaintiff's personal materials (including his radio, hygiene products, religious books, and legal materials) if he did not drop the case. (ECF No. 3 at ¶¶ 43-44.) During the search, Defendant Harkcom discovered an unfinished civil rights complaint Plaintiff was planning to file against seven SCI-Somerset employees. Id. at ¶ 47. Defendants Harkcom and Pritts then confiscated the unfinished complaint, along with other legal materials, Plaintiff's radio, two religious books and one record box. Id. at ¶¶ 50, 52. They also destroyed Plaintiff's deodorant, toothbrush and lotion. Id. at ¶ 51. Before leaving Plaintiff's cell, Defendant Pritts allegedly stated that next time he was going to take all three of Plaintiff's legal boxes if he did not put a stop to all of his litigation. Id. at ¶ 53. They tried to force Plaintiff to sign fabricated confiscation receipts, but Plaintiff did not sign them, maintaining that his confiscated property was not contraband. Id. at ¶ 54.

Plaintiff's exhibits belie his allegations that Defendants Harkcom and Pritts confiscated his legal materials in retaliation for his litigation. Specifically, his exhibits indicate that all of the

confiscated items from this search were placed in an evidence locker because Plaintiff had an excess of records boxes in his cell which exceeded property guidelines. *See* Plaintiff's Exh. Nos. 29, 32, 33. Additionally, the exhibits indicate that no legal documents were torn or destroyed. Id. Nevertheless, Plaintiff has not alleged that he suffered an actual, concrete injury as a result of any deprivation that may have occurred. Therefore, any access to courts claim that Plaintiff seeks to raise would necessarily fail. *See* Lewis v. Casey, 518 U.S. 242 (1996); *see also* Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997) (following Lewis, claims by prisoners require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim). Plaintiff has also failed to state a due process claim because, as stated *supra*, the grievance procedure was available to him following the alleged loss of property. *See* Hudson, *supra*.

Plaintiff next alleges that Defendants Pritts and Harkcom issued him a fabricated misconduct report following the search of his cell. (ECF No. 3 at ¶ 57.) The report allegedly indicated that Plaintiff altered or tampered with his radio from its original form, thus making it contraband, and that the two religious books in Plaintiff's possession were both property of the library. Id. at ¶ 57. Plaintiff alleges that Defendant Pritts issued the fabricated misconduct in retaliation for his litigation activities and in retaliation for the previous grievance he had filed against him on January 28, 2011. Id. at ¶ 58. Plaintiff also states that Defendant Pritts wanted to extort Plaintiff out of his radio. Id. at ¶ 58.

With respect to these allegations, it is well established that the act of filing a false disciplinary charge does not itself violate a prisoner's constitutional rights. Instead, inmates have the right not to be deprived of a protected liberty or property interest without due process of law. A property interest may arise from "existing rule or understandings that stem from an

independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). As a matter of law, however, inmates have no legitimate property interest in contraband. *See, generally*, Dantzler v. Beard, No. 09-275, 2010 WL 1008294, at *10-11 (W.D. Pa. Mar. 15, 2010) (collecting cases); Freeman v. Dep't of Corr., No. 07-2191, 2011 WL 1304830, at *3-4 (M.D. Pa. Mar. 31, 2011), *aff'd* 447 F. App'x 385 (3d Cir. 2011). In this case, Plaintiff had no property right in his radio given that it was found to be contraband under DOC policy. Alternatively, no due process violation occurred even if the radio was not contraband.

At the conclusion of Plaintiff's disciplinary hearing on the misconduct, Defendant Dupont found Plaintiff guilty of the charges of possession of contraband (charge #36) and destroying, altering, tampering, or damaging property (charge #38). (ECF No. 3 at ¶ 75.) He reduced the misconduct charge from a Class 1 to a Class 2, and sanctioned Plaintiff to the loss of his radio.[2] Id. at ¶ 80. Plaintiff claims that he was deprived of procedural due process because Defendant Dupont, the hearing examiner, would not examine Plaintiff's supporting documentation that proved the radio was not contraband and did not allow him to cross-examine Defendant Snyder to establish his alleged innocence. Id. at ¶¶ 65, 76-78.

To establish a prima facie case of a procedural due process violation, a plaintiff must establish (1) the existence of a property interest (2) that the state deprived him of and (3) that the deprivation was accomplished without procedural protections of notice and an opportunity to be

---

[2] At his misconduct hearing, Plaintiff explained his version of events, namely that the misconduct report was fabricated in retaliation for his litigation activities and the grievance that he had previously filed against Defendant Pritts. He also explained that his radio had not been tampered with, as the grievance officer had previously determined on February 9, 2011, when the radio was returned to him after it was confiscated following the January 12, 2011 search of Plaintiff's cell. He further explained that the books were not stolen from the library, but rather given to him by Muslim Chaplain Akanan so that Plaintiff could study his religion in his cell. Id. at ¶ 62.

Plaintiff's first misconduct hearing was continued, and at his second hearing on March 12, 2012, Defendant Dupont dismissed the charges against Plaintiff related to the religious books but determined that Plaintiff was guilty of tampering with his radio after the security office informed him that Plaintiff had placed an extra wire in it. Id. at ¶¶ 74-75.

heard.  *See* Rusnak v. Williams, 44 F. App'x 555, 558 (3d Cir. 2002) ("Procedural due process claims, to be valid, must allege state sponsored-deprivation of a protected interest of life, liberty, or property.  If such an interest has been or will be deprived, procedural due process requires that the government unit provide the individual with notice and a reasonable opportunity to be heard.") (citation omitted); Castro Rivera v. Fagundo, 310 F.Supp.2d 428, 434 (D. PR) (listing element of prima facie case).

There is some confusion in this area of the law for prisoners.  The general rule is that where the property taken from the prisoner is taken in a random and unauthorized way, then, if there is an adequate post-deprivation remedy, the property is not taken without procedural due process, i.e., the only process due is that of a *post*-deprivation remedy.  *See*, *e.g.*, Parratt v. Taylor, 451 U.S. 527, 541-43 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-31 (1986).  While Parratt dealt with negligent deprivations of property, the Court later ruled that this reasoning also applied to intentional deprivations of property.  Hudson v. Palmer, 468 U.S. 517, 533 (1983).  Also, as previously stated, the Third Circuit Court of Appeals has held that the DOC's grievance procedure provides an adequate post-deprivation remedy, and that the existence of this post-deprivation remedy forecloses any due process claim.  *See* Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).

A second general rule is that where the property is taken pursuant to a policy, i.e., not taken in a random and/or unauthorized way, *pre*-deprivation process is required.  Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982).  However, as the Court in Logan explained, referring to Parratt, supra, it is sometimes difficult to conceive of how a meaningful deprivation hearing can be provided before the deprivation.  *See*, *e.g.*, Reynolds v. Wagner, 936 F. Supp. 1216, 1228 (E.D. Pa. 1996) ("Admittedly, there is no pre-deprivation remedy. Such a

remedy, however, is not always necessary every time a loss occurs stemming from an established governmental policy."), *aff'd*, 128 F.3d 166 (3d Cir. 1997); Shabazz v. Odum, 591 F. Supp. 1513, 1517 (M.D. Pa. 1984) ("Due process, however, does not require a predeprivation hearing every time a loss occurs as a result of an established governmental procedure."). As explained by the Court in <u>Parratt</u>, in discussing prior case law in this area: "[t]hese cases recognize that either the necessity of quick action or the impracticality of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process." Parratt, 451 U.S. at 539.

The State here confiscated Plaintiff's radio because it was deemed to be contraband, and hence, subject to seizure. This must, of necessity, occur prior to any notice to Plaintiff. However, the post-deprivation remedies accorded Plaintiff satisfied the procedural due process requirements. <u>Logan</u>, 455 U.S. at 437.

To the extent Plaintiff attempts to raise a substantive due process claim regarding the confiscation of his radio, he has once again failed to state a claim. *See* <u>Booth v. King</u>, F.Supp.2d 751, 760 (E.D. Pa. 2004) ("The behavior alleged by [plaintiff] – the mail tampering, restriction of law library use, verbal abuse, and confiscation of property – does not rise to the level of conscience-shocking behavior and therefore [plaintiff's] substantive due process claim is without merit.") The confiscation of Plaintiff's radio simply cannot serve as the basis of a due process violation as it does not shock this Court's conscience.

Plaintiff next alleges that Defendant Dupont found him guilty as punishment for filing lawsuits against prison officials. (ECF No. 3 at ¶¶ 63-64.) According to Plaintiff, Defendant Dupont stated that he personally did not like inmates who filed lawsuits against prison officials

and that he was currently being sued by an "asshole inmate". Id. at ¶ 63. After he found Plaintiff guilty, he allegedly called Plaintiff an "asshole" because he was probably going to sue him too. Id. at ¶ 64.

If Plaintiff is alleging a retaliation claim against Defendant Dupont, he has not stated a claim. Claims of general verbal harassment do not constitute an actionable adverse action. *See* Marten v. Hunt, 479 F. App'x 436 (3d Cir. 2012); Frazier v. Daniels, No. 09-2316, 2010 WL 2040763, at *11 (E.D. Pa. May 20, 2010); Burgos v. Canino, 641 F.Supp.2d 443, 456 (E.D. Pa. 2009). Moreover, Defendant Dupont did not find Plaintiff guilty of all charges, just the charges stemming from his radio. He even continued Plaintiff's hearing until he could converse with the security office and confirm that the radio was contraband. *See* Brightwell v. Lehman, 637 F.3d 187, 194 (3d Cir. 2011) (false misconduct charge that is subsequently dismissed does not rise to the level of an "adverse action"). Furthermore, although Plaintiff was found guilty of the contraband charge, Defendant Dupont downgraded Plaintiff's misconduct from a Class 1 to a Class 2. These allegations hardly suggest a retaliatory motive.

Following his misconduct hearing, Plaintiff submitted numerous request slips to Defendants Rozum, Grubb, Simosko and Snyder, requesting them to take pictures of his confiscated radio and other personal property and requesting a personal interview to aid them in their investigation. (ECF No. 3 at ¶¶ 82-84.) His requests went unanswered. Id. ¶ 84. Plaintiff submitted a request slip to Defendant Collemacine on March 23, 2012, asking why no one from the Security Office was assigned to investigate his claims arising out of March 5, 2012 cell search, and take pictures of his property. Id. at ¶ 85. Not satisfied with Defendant Collemacine's response, Plaintiff submitted another request slip on March 28, 2012. Id. at ¶¶ 86-87. Not satisfied with that response either, Plaintiff submitted a request slip to Defendant

Simosko on March 29, 2012, inquiring as to whether he or Defendant Pritts preserved the pictures of his radio that were taken when it was first confiscated on January 12, 2011. Id. at ¶¶ 88-89. Defendant Simosko responded no, stating that the radio was not retained. Id. at ¶ 90.

It is unclear, what, if any, claims Plaintiff is raising against these Defendants with regard to the aforementioned allegations. Nonetheless, failing to respond and/or response favorably to an inmate's request slip is not, in and of itself, a constitutional violation. *See* Rauso v. Vaughn, No. 96-6977, 2000 WL 873285, at *16 (E.D. Pa. Jun. 26, 2000) (citing cases).

**4.      Claims stemming from May 22, 2013 cell search**

Defendants Pritts and Kalasky conducted a search of Plaintiff's cell on May 22, 2013.[3] (ECF No. 3 at ¶ 92.) Plaintiff alleges that both Defendants made inappropriate verbal remarks during the search regarding his religion. Id. at ¶¶ 93, 96, 103. He also alleges that Defendant Pritts discovered a voluminous amount of legal material related to Plaintiff's case in the Middle District of Pennsylvania at CA No. 3:10-cv-1480, and that Defendant Kalasky told Pritts to "trash it". Id. at ¶¶ 94-96. Defendant Pritts told Plaintiff that they would not trash it if he did him a "special favor," then told Plaintiff that he wanted him to "suck [his] cock". Id. at ¶¶ 97-98. When Plaintiff said no, Defendants Pritts and Kalasky ripped apart his legal documents. Id. at ¶¶ 101-103.

To the extent Plaintiff makes a claim that the verbal harassment and threats he was allegedly subjected to violated his rights under the United States Constitution, he has also failed to state such a claim. As set forth above, allegations of threats and verbal harassment, without injury or damage, do not state a Constitutional claim.

---

[3] Plaintiff filed multiple grievances and appeals related to the aforementioned incidents. Specifically Grievance #403720 related to the February 27, 2012 and March 5, 2012 cell searches, id. at ¶¶ 106-111, and Grievance # 461090 related to the May 22, 2013 cell search, id. at ¶¶ 112-117.

Additionally, Plaintiff states neither a due process nor an access to courts claim. Following the destruction of his legal materials, Plaintiff had an adequate and meaningful post-deprivation remedy available to him in the form of the DOC grievance procedure; therefore, a due process claim for the random and unauthorized destruction of his legal property is foreclosed. *See* Hudson, *supra*. Further, he fails to allege that he suffered an actual, concrete injury as a result of Defendants Pritts and Kalasky destroying his legal documents, a requirement to state an access to courts claim. *See* Lewis, *supra*. Moreover, upon judicial review of the docket for CA No. 3:10-CV-1480 filed in the Middle District of Pennsylvania, the undersigned notes that Plaintiff suffered no injury with respect to pursuing his claims in that case. On May 31, 2013, nine days after the aforementioned incident, Plaintiff filed a motion for extension of time to file a response in opposition to the defendants' motion for summary judgment that was pending. Banks v. Spencer, No. 3:10-cv-1480 (M.D. Pa.) (ECF No. 117.) In that motion, Plaintiff explained that he needed more time to respond because, among other reasons, he was in the RHU and staff at SCI-Somerset was not allowing him to see all of his legal property at one time. Id. He also explained that he needed the extension because his mental health was unstable. Id. Importantly, he did not mention anything about the aforementioned destruction of legal property. Id. He also did not mention it in either of the two additional motions to extend time that he filed subsequently. Id. at ECF Nos. 118, 121. The docket indicates that Plaintiff filed his response in opposition brief on September 6, 2013, and that it was 135 pages in length, and included 238 pages of exhibits. Id. at ECF Nos. 127, 129. Plaintiff's allegations are certainly discredited by the docket.

**5.      Inappropriate pat-down searches**

Plaintiff alleges that Defendant Pritts inappropriately pat searched him on August 22, 2012, when he was walking back from the commissary. (ECF No. 3 at ¶¶ 145-152.) Specifically, he claims that Defendant Pritts roughly groped his groin through his pants with an aggressive tight squeeze and stated "you better not move that is a direct order Muslim trash!" Id. at ¶ 148. Plaintiff claims that he complied with Defendant Pritts' order because he was in fear of his safety and his general population status. Id. at ¶¶ 151-152. Defendant Pritts allegedly committed an additional inappropriate pat down search on May 7, 2013. Id. at ¶¶ 153-161. During this search, Defendant Pritts groped Plaintiff's genitals, made sexually offensive comments, and threatened to sabotage Plaintiff's general population status. Id. at ¶¶ 155, 160, 161. Plaintiff states that he had no choice but to comply with the sexual assault because of Defendant Pritts' ability to compromise Plaintiff's safety and alter his general population status. Id. at ¶¶ 156-157.

Following the incidents with Defendant Pritts on August 22, 2012 and May 7, 2013, Plaintiff filed approximately twenty request slips with various staff members at SCI-Somerset, complaining about what had happened and requesting an investigation and that video footage be preserved. Id. at ¶¶ 162-163, 178-189. He also requested to meet with various mental health staff members to document his allegations of sexual abuse in his mental health records. Id. at ¶¶ 165-166, 168-171. Plaintiff states that nothing was ever done and no investigation took place. Id. at ¶¶ 189, 191. He filed grievances related to the two incidents of alleged sexual abuse (#s 425943, 460434) but they were denied to final review. Id. at ¶¶ 205-220.

Plaintiff did, however, call the Sexual Abuse Hotline and report the alleged sexual abuse that happened on August 22, 2012. Id. at ¶ 221. Lieutenant Hopfer was assigned as the investigating officer and interviewed Plaintiff on September 12, 2012. Id. at ¶ 222. Hopfer did

not interview Plaintiff's witness to the alleged abuse or notify medical staff as Plaintiff requested him to do.  Id. at ¶¶ 223-224.  Hopfer ultimately concluded that Defendant Pritts was just "doing his job" and took no further action.  Id. at ¶ 224.

Plaintiff again called the Sexual Abuse Hotline after the alleged incident on May 7, 2013, but he states that no action was taken following that call.  Id. at ¶¶ 225-226.

A routine pat-down search, which includes the groin area, is a constitutional method of ensuring prison security.  *See* Grummett v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985) ("routine pat-down searches, which include the groin area, and which are otherwise justified by security needs" do not violate the Constitution).  In describing these searches in the context of the Eighth Amendment, one court has explained:

> [a]ny manual search of an individual's body will require some amount of manipulation of the genitals in order to accomplish the purpose of the search. Although "grabbing" and "tugging" could cause some discomfort and embarrassment, it does not rise to the level of "unnecessary and wanton infliction of [pain]" so long as it occurs as part of an otherwise justified search.

Cherry v. Frank, No. 03-129, 2003 U.S. Dist. LEXIS 26495, 2003 WL 23205817, at *12 (W.D. Wis. Dec. 4, 2003).

A punishment is cruel and unusual under the Eighth Amendment when it inflicts unnecessary and wanton pain, including those that are totally lacking in penological justification, Rhodes v. Chapman, 452 U.S. 337, 346 (1981), and those which evince "calculated harassment unrelated to prison needs."  Hudson v. Palmer, 468 U.S. 517, 530 (1984).  To be actionable, the "punishment" must be "objectively, sufficiently serious," and the official must have acted with a "sufficiently culpable state of mind."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Although the United States Supreme Court has not defined what punishment is "objectively, sufficiently serious" to violate the Eighth Amendment's proscription against cruel

and unusual punishment, several courts have found that isolated instances of inappropriate conduct by prison officials do not violate an inmate's constitutional rights under the Eighth Amendment.  *See*, *e.g.*, Washington v. Harris, 186 F. App'x 865, 866 (11th Cir. 2006) (holding that inmate failed to state an Eighth Amendment claim where a prison guard "crept up behind [the prisoner inmate] while he was working," grabbed his genitals, kissed him on the mouth, and threatened to perform oral sex on him); Jackson v. Madery, 158 F. App'x 656, 661 (6th Cir. 2005) (holding that the plaintiff's allegations that a guard grabbed and rubbed his buttocks in a degrading manner during a shakedown in the food area was insufficient to establish an Eighth Amendment violation); Hughes v. Smith, 237 F. App'x 756, 759 (3d Cir. 2007) (holding that the inmate had not alleged an Eighth Amendment violation where the correctional officer allegedly touched the inmate's testicles through his clothing during a single pat-down frisk); Young v. Brock, No. 10-cv-01513, 2012 U.S. Dist. LEXIS 14262, 2012 WL 385494, at *4 (D. Colo. Feb. 7, 2012) (holding that the plaintiff's allegations that he was subjected to unnecessary and unwelcomed sexual touching by a prison guard in the course of a single pat-down search did not state a claim under the Eighth Amendment, particularly where the plaintiff conceded that the pat-down had a penological purpose); Pantusco v. Sorrell, No. 09-cv-3518, 2011 U.S. Dist. LEXIS 58040, 2011 WL 2148392, at *7-8 (D.N.J. May 31, 2011) (holding that the plaintiff's Eighth Amendment claim failed because a single instance of groping during a routine pat-down frisk did not amount to cruel and unusual punishment); Escobar v. Reid, 668 F. Supp. 2d 1260, 1278, 1295-96 (D. Colo. 2009) (holding that a guard's alleged suggestive, sexual touching of an inmate did not state a constitutional violation); Williams v. Anderson, No. Civ. A. 03-3254, 2004 U.S. Dist. LEXIS 20305, 2004 WL 2282927, at *4 (D. Kan. Sept. 7, 2004) (finding no Eighth

Amendment violation where a prison guard grabbed a pre-trial detainee's buttocks, exposed his genitals to the inmate plaintiff, and made crude sexual remarks).

Instead, only severe or repetitive sexual abuse has been found to rise to the level of an Eighth Amendment violation.  *See*, *e.g.*, Schwenk v. Hartford, 204 F.3d 1187 (9th Cir. 1999) (repeated requests for oral sex and attempted rape of inmate by prison guard may establish Eighth Amendment claim); United States v. Walsh, 194 F.3d 37 (2d Cir. 1999) (corrections officer who repeatedly steps on inmate's penis to wantonly inflict pain violates inmate's right to be free of cruel and unusual punishment); Berry v. Oswalt, 143 F.3d 1127 (8th Cir. 1998) (rape and harassment of inmate, including propositions, sexual comments, and attempts to perform nonroutine pat-down violated inmate's Eighth Amendment right to be free from cruel and unusual punishment).

While the Court does not condone the alleged actions or verbal harassment of Defendant Pritts -if true- based on case law Plaintiff's allegations about two inappropriate pat-down searches are simply not sufficiently serious to satisfy the required objective element of the two-prong Eighth Amendment test.  *See* Davis v. Castleberry, 364 F. Supp. 2d 319, 321-22 (W.D. N.Y. 2005) (finding allegation that officer grabbed inmate's penis during routine pat-down insufficient to state constitutional claim and noting that a legitimate pat-down may require touching inmate's genital area for the search to be effective); Williams v. Keane, No. 95 Civ. 0379, 1997 U.S. Dist. LEXIS 12665, 1997 WL 527677, at *11 (S.D. N.Y. Aug. 25, 1997) (no Eighth Amendment claim where inmate alleged that his testicles were fondled by officer as part of a routine pat-down exiting the mess hall).  Thus, he has failed to state an Eighth Amendment claim.

**6.    Denial of protective equipment items and loss of prison job**

Plaintiff, who alleges that he is mentally impaired, was incarcerated in the A-A Block, also known as the Special Needs Unit ("SNU"), when, on December 21, 2012, Defendants Bell, Barkman and Cwik assigned him to be a block worker with the duty to clean the top tier showers. (ECF No. 3 at ¶¶ 266-267, 271.) Plaintiff states that during the course of his job assignment he was exposed to body fluids such as saliva, urine, blood and feces. Id. at ¶ 272. On or about January 2, 2012, Plaintiff complained to Defendants Bell and Barkman about being exposed to such bodily fluids while cleaning the showers with only a pair of thin plastic gloves and asked that he be allowed to wear his own hat and protective equipment, including long thick rubber gloves, a gown, face-shield or mask, mouth piece, and boot covers. Id. at ¶ 273. Plaintiff states that his request was denied by Defendant Barkman in retaliation for a previous grievance he had filed against him on October 21, 2011. Id. at ¶¶ 269-270, 273.

Plaintiff next filed a request slip to Superintendent Defendant Rozum, informing him of the situation and asking him to direct Defendants Bell and Barkman to allow him to wear protective equipment. Id. at ¶ 274. Defendant Rozum forwarded Plaintiff's request slip to Defendant Hainsworth, who responded by telling Plaintiff that the issue had already been resolved and that he was not permitted to wear his ball cap while cleaning the showers. Id. at ¶ 276-277. Plaintiff claims that he was later harassed by Defendants Hainsworth and Barkman for complaining about them in request slips to Defendant Rozum. Id. at ¶¶ 278-279.

On January 27, 2012, Plaintiff filed formal complaints with Governor Tom Corbett, State Senator Stewart J. Greenleaf, and Secretary of Corrections John E. Wetzel. Id. at ¶ 280. He complained that Defendants Rozum, Gehlmann, Hainsworth, Bell and Barkman were harassing

him and would not allow him to wear protective gear while cleaning the showers in retaliation for his complaint. Id. at ¶ 280.

Plaintiff also states that on March 2, 2012, Defendants Rozum, Hainsworth, Bell, Barkman and Cwik transferred him to a different block and removed him from his prison work assignment without any written notification or justification such as a misconduct report. Id. at ¶ 281. Specifically, he says that he was sitting in the day-room on March 2, 2012, when Defendant Bell told him that he was "tired of his [expletive] complaints" and "to pack [his] shit now" because his [expletive] ass [was] being moved to E-Bock." Id. at ¶ 282. Although he was told that his job would follow him with his move, he was later told by Defendant Cwik that he was going to be placed back on General Labor Pool effective March 2, 2012. Id. at ¶¶ 283, 286. Plaintiff complained to Defendant Mulligan, his unit manager, about the termination of his job, but Defendant Mulligan did not respond to the complaint. Id. at ¶ 288. Thereafter, on March 8, 2012, Plaintiff filed a grievance (# 403927) about being terminated from his job. Id. at ¶ 290. It was later denied at final review after being appealed on remand. Id. at ¶¶ 291-298.

Plaintiff presumably attempts to raise an Eighth Amendment conditions of confinement claim with his allegations regarding the conditions that he was exposed to while working in the prison cleaning the showers. The United States Supreme Court has held that exposing inmates to unsanitary conditions can violate the Eighth Amendment. *See* Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981) (recognizing that minimal sanitation is required by the Eighth Amendment); Hutto v. Finney, 437 U.S. 678, 682-83 & nn.3-6 (1978) (regularly holding prisoners in extremely overcrowded conditions where they were exposed to infectious diseases such as hepatitis, together with other conditions, presented a sufficiently serious risk to prisoner health to implicate the Eighth Amendment). *See also* Walker v. Schult, 717 F.3d 119, 127 (2d Cir. 2013)

("[U]nsanitary conditions . . . can, in egregious circumstances, rise to the level of cruel and unusual punishment.") (citing cases).

However, a claim that prison conditions have violated the Eighth Amendment must satisfy both an objective and subjective requirement. As to the objective requirement, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs.'" Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (quoting Anderson v. Coughlin, 757 F.2d 33, 35 (2d Cir. 1985)); *see also* Walker v. Schult, 717 F.3d at 125 ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."). The Fourth Circuit Court of Appeals has held that the objective component is satisfied upon proof that the prisoner suffered a "'serious or significant physical or emotional injury resulting from the challenged conditions,'" or that the prisoner was put at "substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions . . . ." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)).

As to the subjective element, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate indifference.'" Jolly, 76 F.3d at 480 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health and safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Recently, the District of Maine analyzed cases where prisoners filed lawsuits alleging that that they were exposed to unsanitary conditions in violation of the Eighth Amendment when

they were forced to clean blood, feces, and other bodily fluids. *See* Thurston v. Cumberland County, No. 2:13-cv-13, 2014 WL 294487, at *10 (D. Me. Jan. 27, 2014). In Thurston, the court stated that it had not identified one plaintiff-favorable ruling arising from a summary judgment record, though there are cases denying dismissal at the pleading stage. Id. (citing Watson v. Charles, No. 2:10-cv-321, 2011 WL 124649, at *3 (W.D. Mich. Jan. 14, 2011). In granting qualified immunity to the defendant in Thurston, the District of Maine relied on the Fourth Circuit Court of Appeals decision in Rish v. Johnson, 131 F.3d 1092 (4th Cir. 1997), where a panel of that court reviewed a district court decision denying qualified immunity where inmates alleged that their constitutional rights were violated "by failing to provide appropriate protective equipment and clothing to safeguard them from the risk of contracting infectious diseases during the performance of their duties as orderlies responsible for cleaning blood and other body fluids from environmental surfaces." Id. at 1094. The district court in Rish found "that a reasonable person, especially a federal officer trained in the prevention of infection or charged with ensuring that inmates take the required precautions, would know that they were violating [the] inmates' constitutional rights if they refused to provide the required equipment or training." Id. at 1095. In support of their claim, the plaintiffs presented evidence of a universal precautions policy and expert testimony concerning the risk of infection from blood exposure. Id. at 1099. However, the court of appeals held that the evidence was not sufficient to demonstrate that the officials possessed actual knowledge of a substantial risk of harm. Id. In particular, the court noted that the plaintiffs had failed to present any "deposition testimony or affidavit indicating that the prison officials actually knew of a risk or harm," and reasoned that, in the absence of such evidence, the plaintiffs relied entirely on an assertion "essentially that the risk is so obvious that it may be inferred that the prison officials possessed actual knowledge of the risk." Id. Turning

to that question, the court of appeals reviewed expert evidence, federal bureau of prisons policy, and OSHA regulations concerning the hazards of handling blood and other bodily fluids without adequate protection.  Id. at 1099-1100.  The court found such evidence was inadequate to establish deliberate indifference, holding that it was not "adequate to demonstrate that the failure to follow universal precautions created such an obvious and substantial risk that the prison officials must have been aware of it."  Id. at 1100.

Ordinarily, allegations about temporary inconveniences do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  See Watson, 2011 WL 124649 at *3 (citing cases).  Here, Plaintiff does not allege that he was injured in any way or that he was directly exposed to pathogenic conditions.  Plaintiff makes only general allegations that he was exposed to body fluids while cleaning the showers, such as saliva, urine, blood and feces, but he does not allege that his skin ever came into contact with the body fluids described, or that he was forced to clean-up massive amounts of these bodily fluids.  See, e.g., Randles v. Hester, No. 8:98-cv-1214, 2001 WL 1667821, at *1 (M.D. Fla. June 27, 2001) (denying motion to dismiss based on "[p]laintiff's allegations that Defendant forced him, under the threat of discipline, to clean up massive blood spills without furnishing him available protective clothing and equipment").  While he alleges that he was not permitted to wear protective clothing or gear other than a pair of thin gloves, his exhibits indicate that the only item he was actually denied permission to wear was his ball cap.  Thus, the undersigned finds that Plaintiff's allegations are not sufficiently serious to fall within the ambit of the Eighth Amendment.

With regard to Plaintiff's allegations about the loss of his prison job, presumably without due process, he has failed to state a claim because there is no constitutionally protectable interest

in maintaining prison employment.  *See* James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989);

Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975) ("We do not believe that an inmate's

expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest

entitled to protection under the due process clause.").

Finally, Plaintiff alleges that certain individuals failed to respond to his requests and/or

complaints. These allegations, even if accepted as true, do not state a constitutional violation.

*See* Rauso v. Vaughn, No. 96-6977, 2000 WL 873285, at *16 (E.D. Pa. Jun. 26, 2000) (citing

cases).

**7.**      **Denial of personal hygiene items**

Plaintiff alleges that he was denied basic "personal hygiene items" for thirty-six days

while he was on indigent status.  (ECF No. 3 at ¶¶ 324-329.)  Specifically, he claims that

Defendant Mulligan was aware of his indigent status but refused to provide him with basic

hygiene supplies, namely a razor for shaving.[4]  Id. at ¶¶ 332-337.

In total, Plaintiff filed five request slips and two grievances (#s 404376, 406500) from

March 5, 2012, through September 10, 2012, the date his second grievance was denied at the

final appeal level, and, according to Plaintiff, nothing was ever done about the situation.  Id. at ¶¶

338-362.  Plaintiff believes that Defendants Rozum, Hainsworth, Bell, Barkman and Mulligan

were denying him personal hygiene items for thirty-days as punishment for filing grievances

against fellow staff members.  Id. at ¶ 365.

The responses to Plaintiff's grievances and appeals tell a different story and reveal that on

March 5, 2012, Defendant Mulligan did not issue Plaintiff a razor because he believed that

---

[4] Although Plaintiff complains generally that he was denied "personal hygiene items," his request slips and
grievances make clear that his chief complaint concerns Defendant Mulligan confiscating his razor.  He never
complains about specific items that he was denied other than the razor.

Plaintiff was not on indigent status. Plaintiff, however, still had in his possession the previous razor that had bought or that had been issued to him.[5] After filing a grievance on March 13, 2012, Unit Manager Frazier spoke to Defendant Mulligan who admitted that it was his understanding that Plaintiff was not to be issued a razor. Defendant Mulligan was told that Plaintiff was entitled to one, and thereafter Plaintiff was issued it. The responses further indicate that Plaintiff received an indigent bag as needed until he received a personal gift of $750.00 on April 11, 2012, at which time he no longer qualified for indigent status. *See* Plaintiff's Exhibit Nos. 114-139.

As previously noted, the Eighth Amendment is violated when an inmate is deprived of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347. Courts have held that those minimal necessities include provision for basic hygiene. *See*, *e.g.*, Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996) (refusal to provide toothpaste, leading to gum bleeding and receding and tooth decay states Eighth Amendment claim); Young v. Quinlan, 960 F.2d 351, 363 (3d Cir. 1992) (requiring prisoner to request permission to wash hands, receive toilet paper, or drink water states an Eighth Amendment claim); *see also* Garcia v. Kimmel, 381 F. App'x 211, 215-17 (3d Cir. 2010). To successfully plead an Eighth Amendment violation, an inmate must allege both an objective element – that the deprivation was sufficiently serious, and a subjective element – that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 298.

Generally, short-term deprivations of necessities in a prison, as Plaintiff has alleged here, do not give rise to an Eighth Amendment claim unless the plaintiff establishes a resulting physical harm. *See* Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989) ("[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly

---

[5] Plaintiff exhibits indicate that this razor was confiscated on March 28, 2012, but it is unclear why.

over a lengthy period of time."); Francis v. Dodrill, No. 3:04-cv-2149, 2006 WL 463927, at *4 (Feb. 27, 2006) (no Eighth Amendment violation because inmate suffered no harm from the refusal of showers for twelve days); Lopez-Diaz v. County of Lancaster, No. 01-cv-5181, 2003 WL 1592001, at *3 (E.D. Pa. Mar. 26, 2003) (finding that a plaintiff's claim of cruel and unusual punishment could be sufficient where he alleged that he was forced to shower in handcuffs for seven months, which led to a rash on various parts of his body); Clayton v. Morris, No. 90 C 2718, 1994 WL 118186, at *6 (N.D. Ill. Mar. 28, 1994) ("The denial of shower privileges over a prolonged period may be actionable if the inmate can allege a specific physical harm that results."). In this case, Plaintiff has not asserted any harm that he suffered from being unable to shave for what could have been only a maximum of thirty-six days, and was most likely less according to his exhibits. This is simply not the kind of "sufficiently serious deprivation" the Eighth Amendment safeguards. Furthermore, even though Plaintiff alleges that he was denied a new razor in retaliation due to grievances he filed; his allegations belie such assertion because he also states that the reason he was denied the razor was because there was confusion about his indigent status. Thus, he has failed to state a claim for retaliation.

8. **Conspiracy**

Plaintiff alleges that all named Defendants engaged in a conspiracy to interfere with his right to access the courts, deprive him of his personal property, retaliate against him and psychologically abuse him, so that they could control him by intimidation and coercion. (ECF No. 3 at ¶¶ 124-125.) He also alleges that all named Defendants may have been working in concert to intimidate him and also that they engaged in a common plan or conspiracy to physically and sexually abuse him in retaliation for his past complaints and grievances. Id. at ¶¶ 130, 228-234. Additionally, he alleges that all named Defendants engaged in a common plan to

control his financial status by denying him employment when he was moved into the general population and that this was done in retaliation for his filing of grievances and formal complaints.  Id. at ¶¶ 300-302, 305.  Finally, he alleges that Defendants Rozum, Hainsworth, Bell, Mulligan and Barkman were engaged in a common plan and conspiracy to obstruct him from receiving basic hygiene tools that were owed to him due to his indigent status.  Id. at ¶¶ 363-364, 368.

In order to demonstrate a section 1983 civil conspiracy, a plaintiff is required to show that "two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law."  Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993); *see also* Royster v. Beard, 308 F. App'x 576, 579 (3d Cir. 2009).  While the Third Circuit is "mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances . . ., the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."  Capogrosso v. Supreme Ct. of N.J., 588 F.3d 180, 185 (3d Cir. 1009) (quoting Crabtree v. Muchmore, 904 F.2d 1475, 1481 (10th Cir. 1990)); *see also* Adams v. Teamsters Local 115, 214 F. App'x 167, 175 (3d Cir. 2007) (a conspiracy claim cannot proceed merely upon the conclusory averment that a conspiracy took place but rather requires factual averments that would support the inference that the defendants engaged in concerted or joint action).  All of Plaintiff's conspiracy allegations are based on pure speculation; thus, they fall short of stating a claim.

**9.    Excessive Force**

Plaintiff alleges that the sexual and mental abuse that he endured at the hands of the Defendants constituted excessive force in violation of the Eighth Amendment.  (ECF No. 3 at ¶¶

389-391.) However, this alleged abuse, as evidenced in the facts and circumstances underlying the Complaint, is not the same as excessive force protected by the Eighth Amendment. In the context of an excessive force claim, the core judicial inquiry of whether the measure taken inflicted unnecessary and wanton pain and suffering is that set out in Whitley v. Alberts, 475 U.S. 312 (1986): "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). The allegations stated in the Complaint do not support any claim for relief for excessive force.

**10.** **Supervisor Liability**

Throughout his Complaint, Plaintiff makes general allegations that Defendants Rozum, Grubb, Simosko, Snyder, Collemacine, Dupont, Bakos, Gehlmann and Hainsworth are liable in their supervisory capacity for failing to perform their job functions, including controlling and supervising their subordinates. He states that these Defendants either knew or should have known that their subordinates were violating prisoners' constitutional rights in deliberate indifference to the health, safety and welfare of all the inmates at SCI-Somerset.

The Court of Appeals for the Third Circuit has explained that there are several potential theories of supervisory liability, although the terminology used to describe such theories is not always consistent. *See* Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 71 (3d Cir. 2011); Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010).

First, supervisors may be liable if, with deliberate indifference to the consequences, they "established and maintained a policy, practice or custom which directly caused the constitutional harm." Santiago, 629 F.3d at 129 n.5; A.M. ex rel. J.M.K. v. Luzerene Cty. Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004). Additionally, supervisory liability may attach if the

supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Id. (citing A.M., 372 F.3d at 586). To impose liability, there must be both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate. Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988).

Apart from general allegations, Plaintiff has not pointed to a specific policy, practice or custom that caused a violation of his rights. While Plaintiff does claim that some of the Defendants directly participated in the alleged wrong or had knowledge and acquiesced in their subordinates' violations, Plaintiff cannot state a claim against these Defendants in their supervisory capacity because he has not stated an underlying claim which would give rise to potential supervisory liability.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 32) be granted and that Plaintiff's Complaint be dismissed with prejudice for failure to state a claim.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2, the parties are allowed fourteen (14) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: December 12, 2014

Lisa Pupo Lenihan
United States Magistrate Judge

cc: Ronald Banks
    DZ-5843
    S.C.I. Albion
    10745 Route 18
    Albion, PA  16472-0002